IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

GLENN HARVEST,  )
    Plaintiff,  )
 )
v.  )    No. 3:03-CV-702
 )    (Phillips)
STATE OF TENNESSEE BOARD OF REGENTS,  )
d/b/a ROANE STATE COMMUNITY COLLEGE,  )
    Defendant.  )

## MEMORANDUM OPINION

Plaintiff Glenn Harvest has sued his former employer, Roane State Community College alleging (1) Title VII race discrimination based on failure to promote, (2) Title VII race discrimination based on disparate treatment; and (3) Title VII retaliation. Defendant has moved for summary judgment asserting that there are no genuine issues as to material facts, and that Roane State is entitled to judgment as a matter of law on all of plaintiff's claims. For the reasons which follow, defendant's motion for summary judgment will be granted, and this action will be dismissed.

## Factual Background

The facts, taken in a light most favorable to plaintiff, are as follows: Roane State hired Glenn Harvest on October 2, 2000 to work as a custodian, cleaning buildings at its Harriman campus. In late 2001, Harvest applied for the position of painter. On October 23, 2001, a white male was hired for the position.

Next, Harvest applied for one of the two open positions as security guard. The positions were filled on December 12, 2001. Harvest alleges that both positions were filled by persons with less seniority than plaintiff, though only one of the new hires was white (the other was African-American). Harvest complained to his superiors that he believed the hiring decisions to be motivated by racism.

Harvest next applied for a position as mail carrier. The position was filled in the Spring of 2002 by a white male. Harvest complained again. Harvest then applied for the position of grounds foreman, which was filled by a white male. Harvest complained again. He applied for the position of head custodian, which was filled by a white female. Harvest then filed a charge of discrimination with the Tennessee Human Rights Commission (THRC) on January 8, 2003, alleging failure to promote and retaliatory treatment in violation of Title VII.

After Harvest filed his charge with the THRC, his supervisor, Raink Hembree, began checking plaintiff's work more than usual, following him as he performed his job, directed other employees in maintenance and security to "watch" him and report any deficiencies, and verbally reprimanded him for minor details. Harvest submitted a written complaint to his supervisor regarding allegations of harassment, which he retracted the next day.

On January 30, 2002, Harvest did not report to work at his scheduled time of 7:00 a.m. and did not call in until 8:15 a.m. Harvest received a memorandum from his supervisor, reminding plaintiff of the procedure to follow when he was going to be late for work. On February 7, 2003, plaintiff received a memorandum from his supervisor regarding his failure to turn in his keys on a daily basis. On February 24, 2003, plaintiff failed to turn in his keys before leaving work, and received a written notice from his supervisor. Harvest was also reprimanded for his angry outbursts and disrespectful behavior directed towards his supervisors and co-workers. As a consequence of the reprimands, Roane State placed Harvest on probation for six months, effective April 7, 2003.

The next day, Harvest called the Oak Ridge Police Department to file a complaint against his supervisor, Raink Hembree for an alleged verbal confrontation between the two men at the workplace. Officer Calvin Dumas responded to plaintiff's call and interviewed both plaintiff and Hembree at Roane State's campus. After the interviews, Officer Dumas concluded that the confrontation was a verbal one only and that Hembree in attempting to speak with Harvest who kept moving, did in fact follow Harvest down the hall attempting to communicate to Harvest what he wanted him to do. Officer Dumas concluded that Harvest was trying to get Hembree in trouble and dismissed the complaint.

Harvest was terminated by Roane State on April 10, 2003. Defendant's stated reason for terminating plaintiff was because plaintiff was on probation at the time he called the police, and based on the investigating officer's assessment, plaintiff initiated the

police involvement in an attempt to get his supervisor in trouble. Harvest amended his charge of discrimination to add a claim for retaliatory discipline on April 24, 2003.

Roane State has moved for summary judgment asserting that (1) plaintiff's Title VII discrimination claims based on failure to promote to the position of painter and security guard should be dismissed because these claims are time-barred; (2) plaintiff cannot establish all the elements of a prima facie case of discrimination or retaliation based on race; and (3) Roane State had legitimate non-discriminatory reasons for its employment decisions. Therefore, Roane State asserts that it is entitled to judgment as a matter of law on all plaintiff's claims.

Plaintiff Glenn Harvest has responded in opposition, stating that defendant failed to promote him because he was African-American. Harvest also claims that his supervisors treated him differently and harassed him in retaliation for voicing his complaints about race discrimination, and that defendant terminated him in retaliation for filing a charge of race discrimination with the THRC.

**Standard of Review**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary

-4-

Case 3:03-cv-00702   Document 29   Filed 06/09/05   Page 4 of 19   PageID #: 31

judgment, the court views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## **Analysis**

Harvest alleges that Roane State violated Title VII by discriminating and retaliating against him because of his race and his filing of a THRC complaint. Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer to discriminate against any individual because of that individual's race. 42 U.S.C. § 2000e-2(a). Title VII also prohibits retaliation by an employer where an individual has engaged in protected activity, such as the filing of a charge of discrimination. 42 U.S.C. § 2000e-3(a).

### A. Continuing Violation Doctrine

Roane State asserts that plaintiff's claims for failure to promote to the positions of painter and security guard are time-barred and should be dismissed. Relief

under Title VII may be had only if a plaintiff files an employment discrimination charge with the Equal Employment Opportunity Commission within 180 days of the alleged misconduct, or files such a charge with a state or local agency (in this case, the THRC), within 300 days of the alleged misconduct. 42 U.S.C. § 2000e-5(e)(1); *National R.R. Passenger Corp v. Morgan,* 536 U.S. 101, 116-117 (2002). In *Morgan*, the Supreme Court clarified the inquiry governing these time limits:

> The critical sentence of the charge filing provision is: "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." The operative terms are "shall," "after . . . occurred," and "unlawful employment practice." "Shall" makes the act of filing a charge within the specified time period mandatory. "Occurred" means that the practice took place or happened in the past. The requirement, therefore, that the charge be filed "after" the practice "occurred" tells us that a litigant has up to 180 days or 300 days after the unlawful practice happened to file a charge with the EEOC.
>
> The critical questions, then, are: What constitutes an "unlawful employment practice" and when has that practice "occurred"? ... The answer varies with the employment practice.

*Id.*, at 119-20. In addition, "this time period for filing a charge is subject to equitable doctrines such as tolling or estoppel." *Id.* At 120.

It is undisputed that the painter position was filled on October 23, 2001, and the two security guard positions were filled on December 12, 2001. Harvest filed his charge with the THRC on January 8, 2003. It is clear that Harvest neither filed a charge of discrimination with the EEOC within 180 days of the promotion decisions, nor filed a charge of discrimination with the THRC within 300 days of the promotion decisions.

-6-

Harvest counters that his claims are not time-barred because Roane State's repeated pattern of failing to promote him falls under the "continuing violation" doctrine. The continuing violation doctrine allows the time limitations to run from the date of the most recent misconduct in certain limited circumstances.

The Sixth Circuit recognizes two categories of continuing violations: (1) the "serial" violation, which involves repeated discriminatory acts, such as where an employer continues to impose disparate work assignments between similarly situated employees, and (2) the "long-standing and demonstrable policy" violation, which involves intentional discrimination against a protected class, such as an established and repeated pattern of paying men more than women. *See, i.e., EEOC v. Penton Industrial Publ Co. Inc.,* 851 F.2d 835, 837-39 (6th Cir. 1988); *Alexander v. Local 496,* 177 F.3d 394, 408-09 (6th Cir. 1999). A "long-standing and demonstrable policy" is often created or evinced by the employer's repeated discriminatory acts. *See, e.g., Alexander*, *id.* (finding both types of continuing violation when a union consistently failed to inform black members of continued work eligibility guidelines but consistently informed white members of those guidelines). However, the categories are distinguishable, because a "serial" violation affects only one person, while a "policy" violation reveals disparate treatment of the protected class as a whole. *See, e.g., Penton Industrial,* 851 F.2d at 838-39 (rejecting, in a sex discrimination case, a "policy" violation theory for a single incident of disparate pay); *Tenebaum v. Caldera,* 2002 U.S.App. LEXIS 18155 (6th Cir. 2002) (rejecting, in a Title VII case, a "policy" violation theory for lack of facts supporting "similar discrimination against other American

-7-

Jews" or "class-wide discrimination"); *Janikoski v. Bendix Corp.,* 823 F.2d 945 (6th Cir. 1986) (rejecting in an ADEA case a "policy" violation theory when plaintiff failed to allege an "over-arching policy" of age discrimination).

The first category, "serial violation," was redefined by the Supreme Court's holding in *National R.R. Passenger Corp v. Morgan*. Under previous Sixth Circuit case law, a plaintiff could recover for all violative acts under the serial violation theory if at least one act in a series occurred within the filing time. Under the new *Morgan* standard, "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify . . . and each constitutes a separate actionable unlawful employment practice, and they are not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *National R.R. Passenger Corp v. Morgan,* 536 U.S. at 125; *Tennebaum,* 2002 U.S.App. LEXIS 18155 at **7-8 (6th Cir. Aug. 29, 2002).

By the plain language of *Morgan,* Roane State's failure to promote Harvest to the positions of painter and security guard are discrete acts. The time limitation begins to run at the time Roane State hired/promoted other individuals instead of plaintiff. At the latest, this occurred on December 12, 2001, the day the two security guard positions were filled. Harvest, however, did not file his charge with the THRC until January 8, 2003, more than 300 days after the alleged discrete discriminatory acts took place. Accordingly, a "serial" violation claim alleging a failure to promote to the positions of painter and security guard is time-barred under 42 U.S.C. § 2000e-5(e)(1).

Harvest's claims regarding the mail carrier, grounds foreman and head custodian positions do not change this analysis. A series of discrete, unconnected discriminatory acts do not constitute a serial violation for purposes of the statute of limitations; each act constitutes a separate unlawful employment practice. *Sherman v. Chrysler Corp.,* 2002 U.S.App. LEXIS 19186 at *10 (6th Cir. Sept. 16, 2002) (holding that allegations regarding three promotions were discrete acts which did not constitute a continuing violation). An EEOC charge must be filed within the 180 or 300 day time period after each discriminatory act occurs. *Morgan,* 536 U.S. at 122.

The second category, the "long-standing and demonstrable policy" violation, remains unaffected by *Morgan*. *See Tannebaum,* 2002 U.S.App. LEXIS 18155 at n.3. The plaintiff in this category must establish, by a preponderance of the evidence, "that some form of intentional discrimination against the class of which plaintiff was a member was the company's standing operating procedure." *Penton Industrial,* 851 F.2d at 838; *Tannebaum,* 2002 U.S.App. LEXIS 18155; *Alexander,* 177 F.3d at 408-09; *Janikoski,* 823 F.2d 945.

In this case, Harvest has alleged that he was denied "seven promotions in two years in favor of white persons with less experience and/or less seniority." However, in order for a "policy" violation to apply, Harvest must establish that some form of intentional discrimination against African-Americans was Roane State's standard operating procedure. Harvest has not provided any factual evidence to support an inference that Roane State's failure to promote him is part of a pattern or practice of failing to promote African-Americans

as a class. Without such facts, no reasonable jury could find that a "policy" violation exists. In fact, the record shows that an African-American male was hired for one of the positions (security guard) for which plaintiff applied. In addition, the Dean of Students for Roane State was a black female, as well as the Affirmative Action Officer, Kathy Gethers. Harvest cannot show that Roane State had a pattern or practice of failing to hire/promote African-Americans as a class. Accordingly, the claims for failure to promote Harvest to the positions of painter and security guard remain time-barred by 42 U.S.C. § 2000e-5(e)(1) unless tolled by an equitable doctrine.

Courts have held that equitable tolling is appropriate in cases of active deception such as where an employee has been "lulled into inaction by his past employer, state or federal agencies, or the courts." *Shorter v. Memphis Light, Gas & Water Co.,* 252 F.Supp.2d 611, 624 (W.D.Tenn. 2003) (quoting *EEOC v. Dillard's Dept Stores, Inc.,* 768 F.Supp. 1247, 12523 (W.D.Tenn. 1991). Equitable tolling is also appropriate in cases where an employee has been "actively misled" or prevented in an extraordinary manner from asserting his rights. *Id.*

Harvest has alleged no facts to indicate that Roane State lulled him into inaction or actively misled or prevented him from asserting his rights. As such, equitable tolling is not appropriate in this case. Accordingly, Harvest' claims for failure to promote to the positions of painter and security guard are time-barred and will be dismissed.

-10-

Because this issue is dispositive, the court need not reach an analysis of the merits of these claims.

### B. Failure to Promote Claims

Harvest also alleged that Roane State failed to promote him to the mail carrier, grounds foreman and head custodian positions because of his race. Under the established framework for deciding discrimination cases set forth in *McDonnell Douglas Corp v. Green,* 411 U.S. 792, 802 (1973), a plaintiff establishes a *prima facie* claim for failure to promote under Title VII by demonstrating that (1) he is a member of a protected class, (2) he applied for and was qualified for the promotion, (3) he was considered for and was denied a promotion, and (4) other employees not in the protected class of similar qualifications received promotions. *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1020-21 (6th Cir. 2000). If the plaintiff establishes the elements for a *prima facie* case, the burden then shifts to the defendant to set forth a legitimate, nondiscriminatory reason for the adverse employment action it took against the plaintiff. *See McDonnell Douglas,* 411 U.S. at 802. If the defendant carries that burden of production, plaintiff must then prove "by a preponderance of the evidence" that the defendant's proffered reasons were not its true reasons, but were merely a pretext for illegal discrimination. *Texas Dept of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981). More specifically, a plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions. *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1083 (6th Cir. 1994).

-11-

Harvest, as an African-American, belongs to a protected class. In addition, Harvest established that he applied for and was rejected for a promotion while a person not in his protected class received the promotion. However, Harvest cannot established that he had similar qualifications to the person chosen for each position.

At the time the position of mail carrier became open, Michael McClure had been working for Roane State for over ten years compared to Harvest's one year. In addition, while employed as a security guard for Roane State, McClure also served as a back-up for Roane State's courier, shipping, and receiving, and had three years of related experience. Based on his work experience and seniority, McClure was promoted rather than plaintiff. Harvest cannot establish that he had similar qualifications as McClure; the record shows that Harvest had less experience and less seniority than McClure. Thus, Harvest cannot establish the fourth element of a *prima facie* case of discrimination for Roane State's failure to promotion him to mail carrier, and his claim as to that position will be dismissed.

Turning to the position of grounds foreman, the record shows that Chris Galllop, a white male, was selected for the position. The position required supervisory skills and experience. Gallup had three years of experience supervising employees in landscaping and agricultural businesses. Additionally, Gallop graduated from the University of Tennessee with a Bachelor of Science degree in Ornamental Horticulture. Harvest had a high school education and only brief experience in grounds maintenance and landscaping

-12-

which does not compare to the educational background and work experience that Gallop had in this field. Harvest cannot establish a *prima facie* case for the failure to promote him to grounds foreman as he was not similarly situated to Gallop in education or experience, and this claim will also be dismissed.

Roane State hired Tanya Souther, a white female, for the position of Head Custodian. As with the previous positions, Harvest cannot establish that he had similar qualifications as Souther. The Head Custodian position required supervisory experience and responsibilities. Souther had four years experience owning and operating a construction business in which she supervised four to six employees. The record does not show that Harvest had any supervisory experience. In his application, Harvest included in his work history employment with Roane State, Boeing Company, and the City of Oak Ridge Parks Department. As a custodian for Roane State, Harvest did not have any supervisory responsibilities. According to plaintiff's supervisor at Boeing, Harvest worked as a store keeper moving parts from one area of the plant to another and had no supervisory authority while at Boeing. Harvest admitted that while self-employed as a painter, he did not supervise anyone. Although Harvest states that he supervised a summer intern while he worked for the City of Oak Ridge Parks Department, this supervisory experience is not comparable to Souther's experience running and operating her own business where she supervised numerous employees. Thus, Harvest cannot establish a *prima facie* case for the failure to promote him to Head Custodian as his experience was not comparable to Souther's.

The undisputed facts in the record demonstrate that all of the successful candidates were more qualified for the positions than plaintiff.  As such, Harvest has failed to show that he was qualified for all of the positions he applied for and that he was similarly situated to the individuals hired.  Thus, Harvest cannot establish a *prima facie* case for failure to promote and his claims will be dismissed.

### C.  Retaliation Claims

Harvest also alleged both that he was subjected to retaliatory harassment and that he was terminated in retaliation for engaging in protected activity.  42 U.S.C. § 2000e-3(a) prohibits retaliation against an employee "because he opposed any practice made an unlawful practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" in connection with an unlawful employment practice.  The *prima facie* case of retaliation requires a plaintiff to demonstrate that (1) he engaged in an activity protected by Title VII, (2) the exercise of his civil rights was known by the defendant, (3) the defendant took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action.  *Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 661 (6th Cir. 1999).

First, Harvest alleged disparate treatment with respect to the terms and conditions of his employment.  Harvest does not present any direct evidence of discrimination; however, in the absence of direct evidence of discriminatory treatment, proof of discriminatory motive can be inferred from the mere fact of differences in

-14-

treatment. *See Shah v. General Elec. Co.,* 816 F.2d 264, 267 (6th Cir. 1987). In order to satisfy the requirements of the *prima facie* case of disparate treatment, the plaintiff must produce evidence that (1) he is a member of a protected class, (2) he was subjected to an adverse employment decision; (3) he was qualified for the position, and (4) for the same or similar conduct he was treated differently from similarly situated non-minority employees. *See Harrison v. Metropolitan Gov't of Nashville and Davidson County,* 80 F.3d 1107, 115 (6th Cir. 1996); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992); *Beaven v. Commonwealth of Kentucky,* 783 F.2d 672, 676 (6th Cir. 1986).

Harvest alleged in his complaint that "white custodial employees were not similarly watched, nor reprimanded for the same and/or similar infractions." There is no dispute that Harvest belongs to a protected class and that he was qualified for the custodian position. However, defendant argues that being "watched" is not an adverse action as defined by the Sixth Circuit. The Sixth Circuit has adopted the following standard for determining whether an employment action is "materially adverse" for the purposes of Title VII discrimination and retaliation claims:

> A materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins.,* 188 F.3d at 662. These factors are to be evaluated objectively, and not from the subjective interpretation of the complainant. *See Kocsis v. Multi-Care Mgmt.,* 97 F.3d 876,

886 (6th Cir. 1996). The Sixth Circuit has consistently held that *de minimis* employment actions are not materially adverse and, thus not actionable. *Hollins,* 188 F.3d at 662. Accordingly, the court finds, as a matter of law, that being "watched" by one's supervisor does not rise to the level of a materially adverse change in the terms and conditions of employment.

Harvest also alleged the following acts of retaliation by Roane State: (1) suspending him without pay for two to three days; (2) threatening to fire him for complaining about not being promoted; (3) harassment by his supervisors; and (4) his termination. Harvest concedes that he never received a letter, note or memorandum telling him that he was suspended. The record also shows that although Harvest was sent home on occasion to calm down after an inappropriate outburst at work, he was never suspended without pay while employed by Roane State. The complaint also alleged that at a meeting with Kathy Gethers, Roane State's Affirmative Action Officer and Human Resources Officer, and another employee, Gethers threatened to fire him for complaining about not being promoted to the positions for which he applied. However, Gethers testified in her deposition, that she never threatened to fire plaintiff and further, that plaintiff never mentioned his concerns to her about not getting promoted. Rather, Harvest made vague allegations about unfair treatment without providing any specifics. Harvest has not provided any testimony or evidence to support the allegation in his complaint that Gethers threatened to fire him.

-16-

Nor has plaintiff established that similarly-situated non-protected employees were treated more favorably. As to his complaints about retaliatory harassment, Gethers testified that she met with Harvest to discuss his allegations of disparate treatment. Harvest could not give her any names of individuals he felt were being treated more favorably. Additionally, the record shows that although Harvest made general allegations of disparate treatment to Raink Hembree, Hembree testified that Harvest did not make any specific complaints. Plaintiff has not provided any names of or information about the individuals he feels were treated more favorably. To the contrary, plaintiff's supervisor, Hembree, testified that white employees under his supervision were reprimanded for similar infractions. In addition, Harvest has never denied that he engaged in the actions for which he was reprimanded. Accordingly, plaintiff's claims for disparate treatment/retaliatory harassment are without merit, and will be dismissed.

Turning now to Harvest's claim that he was discharged in retaliation for filing a complaint with the THRC, Harvest has shown that he filed two charges of discrimination, his initial charge on January 8, 2003, and a supplemental charge on April 24, 2003; that his action was made known to Roane State through the attempts of the THRC to investigate his claims, and that he was terminated. However, Harvest has not shown a causal connection between his complaints of discrimination and his termination. The record contains no testimony or other evidence that Roane State's disciplinary actions regarding Harvest were based on anything other than his poor work performance and disruptive behavior. Moreover, as stated above, Harvest does not deny the actions for which he was

reprimanded and ultimately terminated. Finally, the THRC did not receive Harvest's supplemental complaint until April 24, 2003, two weeks after his termination on April 10, 2003, so it could not have motivated Roane States' decision to terminate him.

Even if the court were to find a nexus between Harvest's complaints of discrimination and his termination, Roane State has proffered legitimate non-discriminatory reasons for plaintiff's termination. It is undisputed that Harvest was placed on probation for repeated failures to follow instructions of his supervisor and for his frequent angry outbursts and disrespectful attitude toward his supervisors and co-workers. Defendants' stated reason for terminating plaintiff was because plaintiff was on probation at the time he called the police, and based on the investigating officer's assessment, plaintiff initiated the police involvement in an attempt to get his supervisor in trouble. Defendant also stated that the call to the police and resulting investigation created a disruption in the workplace. Hembree testified that plaintiff's actions on April 8 were the "straw that broke the camel's back" prompting his discharge. The court finds, as a matter of law, that Roane State has established a legitimate non-discriminatory reason for its decision to discharge plaintiff.

Consequently, the burden shifts to plaintiff to show that Roane State's proffered reasons for his discharge are pretextual. Harvest must show that material issues of fact exist indicating both that the reasons are false and that they hide a retaliatory motive. He has failed to meet his burden. There is simply no proof from which a trier of fact can find that Roane State's asserted reasons for the discharge were pretextual and

-18-

Case 3:03-cv-00702   Document 29   Filed 06/09/05   Page 18 of 19   PageID #: 45

that retaliation motivated the discharge decision. Plaintiff's subjective view about defendant's employment actions, without further evidentiary support, may not by itself establish that the decision was pretextual. *Anthony v. BTR Auto. Sealing Sys.,* 339 F.3d 506, 516 (6th Cir. 2003). Harvest has failed to meet his burden to show that Roane State's reasons for reprimanding him, not promoting him, and for terminating him, are false and that they hide a retaliatory animus. Accordingly, Roane State is entitled to judgment as a matter of law on plaintiff's claims of retaliatory harassment/discharge.

## Conclusion

For the reasons stated above, the court finds that defendant is entitled to judgment as a matter of law on plaintiff's claims for discrimination and retaliation under Title VII. Accordingly, defendant's motion for summary judgment [Doc. 14] will be granted, and this action will be dismissed.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge